JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| UNILOC LUXEMBOURG, S.A.; and UNILOC USA, INC. | ) CASE NO. CV13-3244-MWF (PLAx) |
| Plaintiffs, | ) ORDER GRANTING DEFENDANTS' |
| v. | ) MOTIONS FOR SUMMARY |
| | ) JUDGMENT OF NON- |
| eCLINICALWORKS, LLC; and | ) INFRINGEMENT [35, 37] AND |
| PULSE SYSTEMS, INC. | ) DENYING AS MOOT MOTION FOR |
| | ) SUMMARY JUDGMENT OF |
| | ) INVALIDITY [36] |
| Defendants. | ) |

This patent action is before the Court on three Motions for Summary

Judgment filed by Defendants eClinicalWorks, LLC and Pulse Systems, Inc.

1

(Docket Nos. 35, 36, 37).  Pulse Systems and eClinicalWorks separately move for summary judgment of non-infringement (Docket Nos. 35, 37) and jointly move for summary judgment of invalidity of the subject patent (U.S. Patent No. 5,682,526 or the "'526 Patent").  (Docket No. 36).  The Court held a hearing on the Motions on August 20, 2013, at with counsel for all parties appeared and offered argument.  Having considered the parties' submissions and arguments, the Court GRANTS Defendants' Motions for Summary Judgment of Non-Infringement and DENIES AS MOOT Defendants' Motion for Summary Judgment of Invalidity.

In deciding these Motions under Rule 56, the Court applies *Anderson*, *Celotex*, and their Ninth Circuit progeny.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986); *In re Oracle Corp. Securities Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) ("Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case.").  The non-moving party may not simply rely on allegations in its pleadings but must identify specific facts raising a genuine dispute that will be material at trial.  Fed. R. Civ. P. 56(c).

## I.   MOTIONS FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT [35, 37]

Plaintiffs allege three claims for relief against Defendants for direct patent infringement, indirect patent infringement, and contributory infringement.  (Docket No. 1).  The Court previously issued a Claim Construction Order in a related case after briefing and argument by all parties.  (CV 11-10122-MWF (PLAx), Docket No. 96).  For jurisdictional reasons, the related case was dismissed, re-filed as two

cases, and consolidated as the present action (CV 11-10122-MWF (PLAx), Docket No. 134), but the Court's Claim Construction Order remains binding on the parties. (Docket No. 41-15).

*"User":*   Defendants expend significant energy trying to re-litigate the Court's     previous construction of the term "user" as it appears in the '526 Patent. At the *Markman* hearing, Defendants sought to define "user" as "a health care provider at the point of care."  (Docket No. 41-15 at 13).  The Court found that "Defendants' proposal [was] too narrow and the term needs no construction." (*Id.*).  In spite of this ruling, Defendants seek once again to restrict the term "user" to individuals operating at a point of care.  Because Defendants essentially attempt to disrupt the Court's prior order, the proper means of bringing this issue to the Court's attention would have been a motion for reconsideration.

Motions for reconsideration may only be brought on the grounds of "(a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision."  Local Rule 7-18.  Defendants refer in passing to new facts but do not attempt to meet the high standard embodied in Local Rule 7-18.

With the disputed claims fully construed in a separate proceeding, the Court need only address the legal arguments of the parties.

*Direct Infringement:*   Defendants contend that Plaintiffs lack evidence to show that they infringed the '526 Patent either directly or indirectly.  Defendants,

entities that build and sell health information management software, argue that Plaintiffs do not have evidence that they or any of their clients performed each step of the '526 Patent, a method patent, in sequential order as is required for a finding of infringement of this particular patent.

At the hearing, Plaintiffs' counsel narrowed the scope of the Court's inquiry considerably by clarifying that Plaintiffs only intend to pursue their allegations that Defendants directly infringed Claim 1 of the '526 Patent.

**_Direct Infringement by Manufacture or Sale:_**  Defendants' production and sale of software cannot, in and of itself, support a claim for direct patent infringement because the '526 Patent claims methods.  *See Harris Corp. v. Ericsson, Inc.*, 417 F.3d 1241, 1256 (Fed. Cir. 2005) (Method patent cannot be directly infringed "by one who makes or sells the components of the system."). Finding direct infringement of a method patent requires that the purported infringer perform each step of the patented method.  *See Ricoh Co., Ltd. v. Quanta Computer, Inc.*, 550 F.3d 1325, 1333 (Fed. Cir. 2008) ("Infringement of a method claim occurs when a party performs all of the steps of the process.") (quotation and citation omitted); *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009) (A "finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period.").

It is well-settled law in the Federal Circuit that selling infringing software does not constitute **_performance_** of a method.  *Harris*, 417 F.3d at 1256; *see also Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1362 (Fed. Cir. 2013) ("To establish liability for direct infringement of a claimed method or process under 35 U.S.C. § 271(a), a patentee must prove that each and every step

of the method or process was performed.").  Thus, Plaintiffs' direct infringement claim cannot be premised solely on Defendants' manufacture or sale of accused software.  Plaintiffs' counsel did not dispute this conclusion at the hearing on the Motions.

*Direct Infringement by Demonstration or Testing:*  As a result, the only proffered basis for finding that Defendants directly infringed the '526 Patent would be a showing that Defendants actually performed the sequential steps of a method taught by the '526 Patent in their own use of the accused software.  Plaintiffs' theory of infringement in this regard is that they have sufficient direct or circumstantial evidence to show that Defendants necessarily performed the steps of the claimed methods by testing their products and/or by demonstrating their products to obtain certification for medical use.  (Docket Nos. 67, 69).

This theory of infringement departs from Plaintiffs' previously articulated contentions.  The Complaint accuses Defendants of making and selling infringing software, referring to certification as *proof* of structural infringement, not as direct evidence of use.  (Compl. ¶¶ 18-20).  Essentially, the Complaint alleges that the accused software unavoidably infringes the claimed methods in a literal way.  The Complaint says nothing about demonstrations or product testing.  The Complaint, when mentioning "use," does not attribute that "use" to Defendants.  Plaintiffs confirmed this approach in their interrogatory responses.  (Docket No. 41-12).  When asked to identify each step a user of Defendants' software must take to infringe the '526 Patent, Plaintiffs stated that no particular steps need to be taken, instead asserting that the software infringes as sold such that any use reads on the '526 Patent.  (*Id.*).  Plaintiffs' recent arguments are also premised in part "on a technical document's paragraph, specifically Paragraph 2.9.1 of the CCHIT

Certification Handbook, that was not cited in Dr. Cooper's report, that no witness discussed at deposition, and that Uniloc did not identify in response to interrogatory responses."  (eClinicalWorks' Reply at 24).

In spite of this background, the Court would not, and does not, now say that the newly articulated theory is outside the bounds of the operative Complaint such that Plaintiffs are barred from relying on it.  Rather, the Court finds that there is simply no basis for finding a genuine issue of material fact to be decided under any theory of infringement articulated by Plaintiffs.  Under Federal Circuit law, chronologically dependent steps in a claimed method must be performed sequentially for a finding of infringement.  *See E-Pass Techs., Inc. v. 3Com Corp*, 473 F.3d 1213, 1222 (Fed. Cir. 2007) ("Substantively, because the language of most of the steps of its method claim refer to the completed results of the prior step, [plaintiff] must show that all of those steps were performed in order."), citing *Mantech Envtl. Corp. v. Hudson Envtl. Servs., Inc.*, 152 F.3d 1368, 1376 (Fed. Cir. 1998) ("[T]he sequential nature of the claim steps is apparent from the plain meaning of the claim language and nothing in the written description suggests otherwise.").

The '526 Patent teaches sequential methods since certain steps of each independent claim rely on the occurrence of immediately preceding steps within that claim.  For example, step (b) of Claim 1 occurs "in response to step (a)".  ('526 Patent, 12:48-51)  Because certain steps of each independent claim can only be performed in response to the execution of other, previous steps within that particular claim, the steps must occur sequentially, as dictated by the patented method, in order to find an act of direct infringement.  As a result, it is Plaintiffs' burden to show a genuine issue of material fact whether the steps of the claimed

1   methods were not just performed, but performed in the order dictated by the '526

2   Patent.

3          Although testing and demonstrative exhibition can constitute infringing use,

4   Plaintiffs have not pointed to any genuine issues of material fact that render the

5   purported infringement anything but hypothetical.  Plaintiffs have not identified

6   evidence from which it could be concluded or inferred that Defendants actually

7   performed each sequential step of any independent method taught by the '526

8   Patent.  *See Harris*, 417 F.3d at 1256 (finding that plaintiff did not show "that the

9   claimed method is actually carried out, rather than simulated" when tested by a

10  defendant); *see also Aristocrat*, 709 F.3d at 1363 (no evidence that testers

11  performed each step of infringing process); *cf. Vita-Mix Corp. v. Basic Holding,*

12  *Inc.*, 581 F.3d 1317 (Fed. Cir. 2009) (finding sufficient to withstand summary

13  judgment expert testimony that certain known testing and demonstrations

14  constituted direct infringement).  Here, as in *Harris*, Plaintiffs fail to raise any

15  question of fact whether Defendants' actually completed each sequential step of

16  the claimed methods as a user, rather than simulating their own programs or

17  performing the steps out of order.

18         ***Internal Testing:***  At the hearing on August 20, 2013, Plaintiffs' counsel

19  made an oral motion pursuant to Federal Rule of Civil Procedure 56(d), requesting

20  that the Court defer consideration of the pending Motions for Summary Judgment

21  until an outstanding discovery dispute can be heard and decided by the Magistrate

22  Judge.  The discovery dispute pertains to evidence of internal test scripts.  Without

23  additional discovery, Plaintiffs essentially concede that they lack sufficient

24  evidence to resist summary judgment as to direct infringement during internal

25  testing.

The disposition of Defendants' Motions for Summary Judgment of Non-Infringement requires either granting or denying Plaintiffs' request in order to determine the contents of the factual record from which a dispute may arise. Having considered the matter, the Rule 56(d) request is DENIED.

Plaintiffs' pending Motions to Compel are untimely under the Court's Scheduling Order, which sets April 8, 2013 as the discovery cut-off date. (CV11-10122 (Docket No. 24). This deadline was the last day on which any hearing on a motion to compel fact discovery could be heard. *See* Order Setting Scheduling Conference (CV11-10122 (Docket No. 21)) (requiring a proposed discovery cut-off date and noting "[t]his means the final day for completion of discovery, including resolution of all discovery motions."); *see also* Order Re Jury Trial (incorporated by reference at CV11-10122 (Docket No. 48)) ("This is not the date by which discovery requests must be served; it is the date by which all discovery, *including all hearings on any related motions*, is to be completed.") (emphasis in original). The rough transcript of the June 25, 2012 scheduling conference reveals that the Court so advised the parties. ("And again, that's the cut-off for a hearing as well."). The Motions to Compel were not filed until August 16, 2013, over four months after the deadline. Pursuant to Rule 16, the Magistrate Judge is without authority to decide the Motions to Compel since the deadline has passed.

Nonetheless, it is apparent that all parties were confused about the meaning of the discovery cut-off date. (*See, e.g.,* Docket No. 97). In light of the potential ambiguity evidenced by the parties' manifest confusion, the Court would not be prepared to deny Plaintiffs' Rule 56(d) request on the basis of Rule 16 alone. But independent and compelling justifications for denial exist beyond the Rule 16 violation.

***First,*** Plaintiffs considerably delayed the filing of their Motions to Compel for months after learning of the existence of the purported test scripts.  Plaintiffs confirmed that defendant Pulse tests its software in a Rule 30(b)(6) deposition on April 18, 2013.  They confirmed eClinicalWorks' use of regression testing and scripts on April 3, 2013.  Plaintiffs rely on these confirmations in seeking test script documents, although they were aware of them around the time of the discovery cut-off date and could have moved to compel their production then.

***Second,*** whether Plaintiffs' requests for production contemplated these specific documents is itself an ambiguous question.  The pertinent Request for Production is Uniloc's Request for Production No. 76, which seeks "[a]ll documents relating to the conception and development of the ACCUSED INSTRUMENTALITY, including engineering or laboratory entries, day planner activities, calendar entries, plans, charts, Gantt charts, specifications, requirement documents, design documents, implementation documents, verification documents, diagrams, schematics, analyses, tests, or change logs for each version of the ACCUSED INSTRUMENTALITY."

Defendant eClinicalWorks objected to this Request for Production as irrelevant, overbroad, and unduly burdensome, but agreed to produce responsive documents to the extent they existed.  The Court would sustain eClinicalWorks' objections as to over breadth and burden since the Request for Production, read literally, requires any document pertaining to the accused software whatsoever, unlimited by allegations of infringement and unbounded as to time.  Defendant Pulse did not object but stated its search for responsive documents remained ongoing.  In spite of Defendants' non-committal responses, Plaintiffs did not meet

and confer with eClinicalWorks about responsive documents until July 22, 2013. The meet and confer with Pulse did not occur until August 6, 2013.

Plaintiffs' contention that Defendants operated under a continuing duty to produce responsive material is unavailing because, given Plaintiffs' shifting theories of infringement, there is no basis for concluding that Defendants were aware of the responsiveness of the documents, if any, during the fact discovery period. Simply, it appears that no party was aware of the relevance of internal test scripts until after Defendants filed their Motions for Summary Judgment of Non-Infringement and Plaintiffs formulated an infringement theory premised on internal testing.

**Third,** it is entirely speculative whether, once produced, Plaintiffs will be able to show by expert opinion that a genuine issue of material fact exists as to direct infringement. In fact, it is not even clear that defendant Pulse uses test scripts to perform its internal testing. Testing is performed but Plaintiffs do not cite any discovery responses or deposition testimony to indicate that specific Pulse documents exist. Contrary to Plaintiffs' argument, it is not obvious that testing necessarily requires "test scripts."

Because the Rule 56(d) request is denied, Plaintiffs are awaiting no further discovery that could provide additional support for their position or raise genuine issues of material fact. The record before the Court is complete.

Without additional discovery, Plaintiffs rely solely on the expert reports of Dr. Richard Cooper and the fact that Defendants admittedly test their software to argue that mere execution of source code resulted in direct infringement. (Docket No. 41-20, 41-21, 41-26, 41-27). This argument is analytically flawed because direct infringement requires not just isolated performance of steps of a method

patent, but step-by-step sequential performance where a sequence is demanded by the claimed method.  Plaintiffs have missed at least one analytical phase – they fail to identify evidence tending to show that testing the accused software actually meant *practicing* the methods taught by the '526 Patent.  *See generally Aristocrat*, 790 F.3d at 1348.

Plaintiffs also fail to counter Defendants' point that place holder data is used to test the accused software, as opposed to data pertaining to "a particular patient" or "for a specific patient" as required by the '526 Patent.  At the hearing, the parties focused their arguments on whether the language of Claim 1 requires data associated with a real-world patient, as opposed to data pertaining to a fictitious character, but the deficiency in Plaintiffs' position on this question is even more fundamental:  Plaintiffs have not identified evidence that Defendants' internal testing uses data associated with *any* patient, real or invented.  There is no evidence in the record to suggest that internal testing met the more general patient requirement in the first place.

***Demonstrations in Conjunction with Certification:***  In the alternative, Plaintiffs propose that Defendants performed each step of the method taught by Claim 1 of the '526 patent by demonstrating their software on one or more occasions in conjunction with a federal certification process.  In sum, Plaintiffs argue that Defendants' software is in compliance with the federal standards for electronic health records ("EHR") as determined by the Certification Commission for Health Information Technology ("CCHIT").  Plaintiffs contend that CCHIT certification requires a software demonstration that infringes Claim 1; because demonstration is required for certification, and Defendants' software is CCHIT

certified, Plaintiffs argue that they raise an inference of direct infringement.  It is not disputed that Defendants demonstrated their software to obtain certification.

The crucial question on the direct infringement claim, therefore, is whether the CCHIT test scripts require a demonstrator to perform each sequential step of Claim 1.  Defendants assert that Plaintiffs have not shown a genuine issue of material fact on this question by way of their expert reports.  The Court agrees.

While it is undisputed that the accused software is CCHIT certified, Plaintiffs do not point to any evidence indicating that the procedures required for CCHIT certification result in performance of the methods taught by the '526 patent in the claimed manner, *i.e.* in the order prescribed by the '526 Patent.  (*See, e.g.,* Ex. A to eClinicalWorks Reply (Docket No. 76-1)).

Notably, Plaintiffs' expert does not offer ***any*** analysis regarding whether the CCHIT procedures read on Claim 1 in sequence.  (*See, e.g.,* Amended Report at ¶ 18.11 (explaining relevant legal standard without discussing sequence); ¶¶ 36.1-36.7 (pulling isolated citations from the CCHIT procedures to show that elements of Claim 1 are present).  Instead, Dr. Cooper identifies disparate sections of the CCHIT test scripts that purportedly infringe portions of the claims taught by the '526 patent.  But as eClinicalWorks notes, Dr. Cooper "fails to cite a single sequential arrangement of test scripts that, when performed in order, would infringe the steps of any claim of the '526 Patent."  (Reply at 19).  It is not that he attempts and fails.  Rather, his analysis is simply consistent with his recited view of the law that all elements need to be present, omitting any discussion of sequence.  There is no discussion about the order of the CCHIT procedures and no opinion offered regarding how their execution infringes each step of Claim 1 sequentially.

Lacking an expert opinion as to sequence, Plaintiffs expect the Court to cobble together different portions of their expert reports to reach its own conclusion on chronology, arguing that this haphazard assessment shows that the steps of Claim 1 were ***necessarily*** performed in order during CCHIT certification demonstrations.  Plaintiffs contend that since the CCHIT procedures are themselves performed sequentially, if number-ordered procedures are performed, they are performed in the order in which they appear in the CCHIT test scripts.  They then attempt, by argument but not in expert opinion, to match sequential CCHIT procedures with the steps of Claim 1.

Delving into the CCHIT procedures cited by Dr. Cooper, however, it is apparent that the only complete chronological procedures offered by Plaintiffs do not sequentially correspond with the ordered steps of the claimed method.  These are procedures 1.62 through 1.64.  (*See* Docket No. 68-3 at 28-30).  Performance of CCHIT procedures 1.62 through 1.64 does not necessarily result in direct infringement of Claim 1 the '526 Patent for a number of reasons:

***First***, Dr. Cooper does not cite an ordered step necessarily reading on a "patient information hierarchy," which the Court previously defined as "an organization of information related to a patient that is arranged into categories and one or more subcategories."  (Docket No. 41-15 at 3).  The portion of the CCHIT test script Dr. Cooper cites for the existence of subcategories does not facially exhibit them.  (Amended Report at ¶ 36.1.6).

***Second,*** the CCHIT test script sections Dr. Cooper relies on to show direct infringement of the preamble of Claim 1 are remote in sequence and unit from procedures 1.62-64.  In other words, those sections pertain to different components of the test script.

***Third***, Dr. Cooper does not explain how the patient information hierarchy, if one is indeed required by the CCHIT test script, is "designed" under the control of the user.  No procedures are cited for this proposition.  Analytically, populating an existing medical record form cannot be characterized as a user's "designing" the record.  The preamble of Claim 1, either read in light of the rest of the '526 Patent or read in isolation, makes clear that the user is enabled to exercise control over the structure of the patient information hierarchy in the claimed method.

This deficiency is further highlighted by the fact that that no evidence is offered to show that the CCHIT test scripts require a demonstrator to "create" new parameters rather than select parameters from pre-existing lists for inclusion in the patient record.  The CCHIT test script excerpts do require that compliant software allow users to ***modify*** parameter result values and parameters, but nothing supports a conclusion that users must be enabled to ***design*** patient hierarchies in the sense that demonstrators create parameters when needed.  For example, the procedures Dr. Cooper relies on to show that a CCHIT demonstrator must "create" parameters actually requires the demonstrator only to select or modify parameters or generate result values.  (Amended Report ¶ 36.2.3).

***Fourth***, procedure 1.62 applies only to Child Health Certification under CCHIT.  There are no facts before the Court regarding whether either Defendant is so certified, undermining the assumption that either Defendant completed this procedure at any time.

***Fifth***, enacting CCHIT procedures 1.62 through 1.64 in order does not read on the sequential steps of Claim 1.  Procedures 1.62 through 1.64 require the following sequence of steps:

- 1.62: Enter prescription for Amoxicillin 250 mg/5ml, 15ml, 4 times a day for a juvenile patient;

- 1.62: The system alerts the user that the dosage is incorrect based on the patient's weight;

- 1.62: The user does not complete the prescription;

- 1.63: The user selects a dosage calculator;

- 1.63: The dosage calculator is used to calculate the appropriate dose for the patient's weight (this step specifically does not require automatic calculation or automatic population of fields);

  o However, this procedure is alternatively satisfied if the software "is able to advise the provider of the proper dosing based on weight";

- 1.64: Amoxicillin prescription is created;

- 1.64: The Amoxicillin prescription is associated with a problem called "right otitis media";

- 1.64: The Amoxicillin prescription is populated with at least data pertaining to the medication name, form, strength, dispense quantity, refills, and sig;

  o This step incorporates the dosage modified for the child's body weight.

According to Plaintiffs' argument, performance of these CCHIT procedures in order results in direct infringement of Claim 1. A close analysis of Dr. Cooper's opinions, however, reveals otherwise. The Court must reiterate that Dr. Cooper did not look at the CCHIT procedures in sequence. Instead, he listed each step of each claim in the '526 Patent (for the most part) and pulled quotes from throughout the CCHIT procedures to show that each step was performed. He did not identify the CCHIT test script excerpts by their specific procedure numbers. This

complicates and undermines the usefulness of his opinions. But by matching the CCHIT test script excerpts with the numbered procedures from which they were culled, the Court finds that it is not possible to say Dr. Cooper's reports support Plaintiffs' argument.

The steps of Claim 1 simply do not match a sequential performance of the cited CCHIT procedures:

| Step of Claim 1 | Allegedly Sequential Corresponding CCHIT Procedure |
|---|---|
| A method in a computer system for designing, under the control of a user, a patient information hierarchy, the hierarchy containing a plurality of parameters including a linked-from parameter having a linked-from possible result value that is linked to one or more linked-to parameters, the method comprising the steps of: | None for the entirety of the preamble but **CCHIT procedure 1.63** is cited for the proposition that "[t]he CCHIT certified 2011 Ambulatory HER test script shows that the dosage (Result value of a linked-from parameter) of a medication is linked to the weight (linked-to parameter) of the patient." (Amended Report ¶ 36.1.9). |
| (a) receiving an instruction from the user to create a new parameter within the patient information hierarchy; | **CCHIT procedure 1.64.** (Amended Report ¶ 36.2.3). |
| (b) in response to step (a), creating a new parameter within the patient | None specifically listed in the Amended Report but it is possible to |

| | |
|---|---|
| information hierarchy; | infer that Dr. Cooper again cites to **CCHIT procedure 1.64.** (Amended Report ¶ 36.2.3). |
| (c) receiving an instruction from the user to specify a plurality of indicated possible result values for the new parameter; | **CCHIT procedure 1.64** (Amended Report ¶ 36.3.2); **CCHIT procedure 1.63**.  (Amended Report ¶ 36.3.4). |
| (d) in response to step (c), specifying the indicated possible result values as possible result values of the new parameter; | **CCHIT procedure 1.64**. (Amended Report ¶ 36.4.1). |
| (e) receiving an instruction from the user to link an indicated linked-from possible result value among the possible result values of the new parameter to one or more indicated linked-to parameters contained within the patient information hierarchy; | **CCHIT procedure 1.63.** (Amended Report ¶ 36.5.3). |
| (f) in response to step (e), within the patient information hierarchy, linking the indicated linked-from possible result value to the indicated linked-to parameters, such that the new parameter is a linked-from | **CCHIT procedure 1.63**(Amended Report ¶ 36.6.3); **CCHIT procedure 1.64.**  (Amended Report ¶ 36.6.5). |

| | |
|---|---|
| parameter, and such that, when the new parameter is displayed for a particular patient, if the new parameter has the linked-from possible result value, the linked-to parameters are displayed in conjunction with the new parameter. | |

At the very least, Dr. Cooper's analysis suggests that CCHIT procedure 1.63 must be performed out of order to directly infringe on step (e) of Claim 1 of the '526 Patent.  Consequently, assuming that either Defendant performed the CCHIT procedures in their internally-numbered sequence, no direct infringement would result because the method taught by Claim 1 would not be performed as specified by the '526 Patent.

Moreover, in their Oppositions and at oral arguments, Plaintiffs conflated steps (a) through (d) of Claim 1 and characterized them as steps that "create a parameter."  Similarly, Plaintiffs called steps (e) and (f) the "linking steps."  But reading Claim 1 at this level of abstraction is not called for by the language of the '526 patent.  Otherwise, Claim 1 would only have two steps.  The Court cannot distil the steps of the Claim into something simpler just for the sake of clarity – to do so would rob the '526 Patent of its intended meaning and has no basis in the record before the Court.  Claim 1 has six sequential steps.  Plaintiffs have not shown a disputed fact tending to show that the CCHIT procedures require performance of those steps in the order in which they are taught.

At the hearing, Plaintiffs cited *A.B. Dick, Co. v. Burroughs Corp.*, for the proposition that intervening steps do not defeat a finding of direct infringement.

713 F.2d 700, 703 (Fed. Cir. 1983) ("It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device."). It is true that one cannot add a step to avoid infringement, but one also cannot cite disjointed and disparate steps from an accused method to prove direct infringement. *See E-Pass Techs.*, 473 F.3d at 1222 ("In contrast, the evidence here shows, at best, that the Palm defendants taught their customers each step of the claimed method in isolation. Nowhere do the manual excerpts teach all of the steps of the claimed method together, much less in the required order."). As a result, any citation to distant CCHIT procedures cannot cure the deficiencies noted by the Court.

Plaintiffs also accurately note that circumstantial evidence can be used to resist a motion for summary judgment on direct infringement. *See Vita-Mix*, 581 F.3d at 1326 (reversible error to require direct evidence of direct infringement). In this case, however, the circumstantial evidence presented by Plaintiffs does not support an inference of infringement, it only supports a ***possibility*** that infringement could have occurred. But the fact of infringing capability is insufficient to survive Defendants' Motions because the methods claimed by the '526 Patent are not limited to teaching bare capacity. *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1329 (Fed. Cir. 2010) ("Unless the claim language only requires the capacity to perform a particular claim element, we have held that it is not enough to simply show that a product is capable of infringement; the patent owner must show evidence of specific instances of direct infringement."). Nor are *ipse dixit* statements by experts sufficient to avoid summary judgment. *See, e.g., Parallel Networks, LLC v. Abercrombie & Fitch Co.*, 704 F.3d 958, 969 (Fed. Cir. 2013) (finding Dr. Cooper's analysis conclusory in an unrelated case). Beyond

being non-sequential, Dr. Cooper's conclusions are unreasoned and the cited procedures do not appear to have a logical nexus to the claimed steps of the '526 Patent.  Dr. Cooper's conclusions with regard to the occurrence of testing and infringing uses of the software are similarly unsubstantiated.

Accordingly, Plaintiffs fail to identify a genuine issue of material fact as to direct infringement.

***Indirect and Contributory Infringement:***  Plaintiffs have not identified a genuine dispute of material fact undermining Defendants' argument that indirect infringement and contributory infringement cannot be shown.  For Defendants to be liable for either type of infringement, Plaintiffs must prove that all steps of the method patent were performed, either by Defendants' clients alone or in conjunction with Defendants.  *See, e.g., Akami Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012) (en banc) (induced infringement of a method patent can occur if a defendant has performed some of the steps of a claimed method and has induced other parties to commit the remaining steps, or if the defendant has induced other parties to collectively perform all the steps of the method, even if no single party has performed all of the steps on its own); *see also Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004) ("There can be no inducement or contributory infringement without an underlying act of direct infringement."); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement."); *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993) ("[T]he act of selling equipment which will not be used so as to directly infringe a method claim cannot constitute one of the dependent types of infringement, that is,

either contributory infringement or inducement of infringement."). Defendants'
Motions argue that Plaintiffs lack evidence to support either indirect or
contributory infringement.

In light of binding Federal Circuit case law, Plaintiffs must show a genuine
issue of material fact regarding an underlying act of direct infringement, which
means sequential performance of each step taught by the '526 Patent, as the Court
explained above. *See E-Pass Techs.*, 473 F.3d at 1222 (plaintiff's evidence did
"not demonstrate that [defendant] actually performed or induced anyone to
perform all of the steps of the claimed method, much less that it did so in the
necessary order."). Teaching one's clients each step of a patented method in
isolation is not sufficient. *Id.*

Plaintiffs have not identified a single purchaser of Defendants' software who
is alleged to have performed any of the steps of the claimed methods. Instead,
Plaintiffs once again argue that infringing capability is sufficient. (*See* Plaintiffs'
Statement of Genuine Disputes of Material Fact Regarding Defendants' Motions
for Summary Judgment of Non-Infringement at ¶ 48) (Docket No. 64)). Although
they cite Dr. Cooper's conclusion that "various source code routines . . . when
invoked and executed, performed the steps of the asserted claims," Plaintiffs do not
show that the codes were ***necessarily*** invoked or executed by any party or non-
party. (*Id.*).

Plaintiffs similarly fail to show circumstantial evidence tending to support a
finding of direct infringement, even accepting as true Dr. Cooper's conclusions
about the accused software's functionality. In sum, there is no evidence in the
record and no basis for inferring that an underlying act of direct infringement ever
occurred. There is only a speculative proposition that someone, at some point may

have invoked the source code in an infringing way.  This is insufficient to survive Defendants' Motions for Summary Judgment on the indirect theories of infringement because those theories depend on a predicate act direct infringement, which cannot be based merely on infringing capability.  *See Fujitsu Ltd.*, 620 F.3d at 1329; *see also E-Pass Techs.*, 473 F.3d at 1222 ("Accordingly, it requires too speculative a leap to conclude that any customer actually performed the claimed method.").

Because there are no genuine disputes of material fact and there are no inferences to be drawn in Plaintiffs' favor, Defendants are entitled to summary judgment on the indirect infringement claims.

Accordingly, the Motions for Summary Judgment of Non-Infringement are GRANTED.

## II.    MOTION FOR SUMMARY JUDGMENT OF INVALIDITY [36]

The Court need not reach Defendants' Motion for Summary Judgment on Invalidity.  The Motion is therefore DENIED AS MOOT.  (Docket No. 36).

The Magistrate Judge is directed to DENY AS MOOT the pending Motions to Compel scheduled for hearing on September 16, 2013.   (Docket Nos. 91, 93).

The Court ORDERS the Clerk to treat this Order, and its entry on the docket, as an entry of judgment.  Local Rule 58-6.

IT IS SO ORDERED.

Dated:_August 29, 2013
_____

_____
MICHAEL W. FITZGERALD
United States District Judge